STONE & DOWNER CO. *v.* UNITED STATES (No. 2160).[1]

DAMAGE IN CUSTOMS CUSTODY—DECISION OF SECRETARY OF TREASURY NOT REVIEWABLE.

R. S. 2984 authorizes the Secretary to abate or refund duties on merchandise damaged while in customs custody. There is no power in the Board of United States General Appraisers or in the United States Court of Customs Appeals to review the Secretary's action under this statute, no matter how unjust or unreasonable it may be.

United States Court of Customs Appeals, May 7, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8500 (T. D. 38996).

[Affirmed.]

*Waterhouse & Lockett (Joseph F. Lockett* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General, for the United States.

---

[1] T. D. 39626.

[Oral argument January 24, 1923, by Mr. Lockett and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH and BARBER, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

About 11 o'clock at night on Tuesday, April 29, 1919, the bark *Professor Koch* was by stress of weather driven on Coxs Ledge, which is near Scituate and about 14 miles south of the entrance to Boston Harbor. The next morning the vessel was pulled off the reef, towed into Scituate Harbor, and there beached.

On May 5, after temporary repairs had been made at Scituate, the bark was towed into Boston Harbor and docked. The vessel was there libeled for salvage, and after some delay on account of the salvage proceedings the vessel was completely unladen on the 13th of May, 1919. Her cargo consisted in part of 542 bales of mohair which was stored at the bottom of the hold and which was therefore not discharged until on or about the 13th of May. By reason of the long-continued submersion of the mohair in salt water, it heated very much and was damaged to the extent of 20 per cent of its value, as shown by an examination made of it by the customs authorities.

On or about the 28th of July, 1919, the importer made application under section 2984 of the Revised Statutes for an abatement of the duties. Section 2984, in so far as it is pertinent to the issues here involved, reads as follows:

SEC. 2984. The Secretary of the Treasury is hereby authorized, upon production of satisfactory proof to him of the actual [*industry*] [injury] or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty * * * while in the custody of the officers of the customs and not in bond, or while within the limits of any port of entry and before the same have been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, out of any moneys in the Treasury not otherwise appropriated, the amount of impost duties paid or accruing thereupon; * * *.

Within two days after receipt of that application by the Treasury Department, it was denied by the Chief of the Customs Division on the ground that there was no evidence submitted establishing that the merchandise was in customs custody at the time it was damaged, and that therefore the relief provided for by section 2984 could not be granted. Thereupon the application for abatement was resubmitted with a letter from the deputy collector stating that under a ruling of the Treasury Department, dated September 11, 1913, Scituate was within the limits of the port of Plymouth. The resubmitted application carried with it the official reports of Customs Inspectors Kuchmeister and Breen. From those reports it appeared that Inspector Breen was assigned to the vessel and took charge of her on May 1, 1919, immediately after she had been pulled off the rocks and towed inside the breakwater at Scituate; that none of the cargo had been removed from the vessel until after she had been towed from Scituate to the pier in East Boston, and that the dis-

charge of the cargo began on May 6, 1919, and ended on May 13, 1919. When Breen took charge the ship's pumps were working.

The Assistant Secretary of the Treasury held that Scituate was not a port of entry and that he therefore could not grant the resubmitted application, inasmuch as the mohair was not damaged while in charge of customs officers or while it was within the limits of a port of entry. The Assistant Secretary having refused to authorize an abatement of duties, the collector of customs levied full duties on the merchandise and the importer protested.

The Board of General Appraisers decided that it had jurisdiction to hear and determine the protest, but that it had no power to interfere with the ruling of the Secretary of the Treasury. The protest was therefore overruled and from that decision this appeal was taken.

The Chief of the Customs Division denied the first application within 48 hours after its receipt. In the face of the fact that customs officers took charge of the vessel within 40 hours after she struck and that the heating of the mohair which caused the damage could not have taken place in that time, the Assistant Secretary of the Treasury, in passing on the second application, held that the goods had not been damaged while in customs custody. Worse than that, he ruled that Scituate was not within the limits of a port of entry, although the records of the department and the official report of the deputy collector, which he had before him, disclosed that Scituate was within the limits and subject to the customs jurisdiction of the port of Plymouth, a port of entry. (See Treasury file No. 90740/4, September 11, 1913; see T. D. 33299; see article 595, Customs Regulations, 1915.) The hasty denial of the first application and the specious reasoning on which was based the refusal of the prayer of the second application force us to the very disagreeable conclusion that the action of the department was decidedly unjust, capricious, and arbitrary.

Unfortunately, however, the Board of General Appraisers and this court have no power whatever to review a decision which worked so manifest a wrong and left to the collector no option other than that of assessing full duties on the damaged merchandise.

The Government has the right to provide for the summary collection of its revenues and to restrict the duty payer to certain special tribunals and to certain specific remedies for acts of injustice that may be done in its behalf. It may, if it sees fit, make the Secretary of the Treasury the final arbiter for the quasi judicial determination of claims against it arising under revenue laws. (Ferry & Co. v. United States, 85 Fed. 550, 553.)

By section 2984 Congress authorized the Secretary of the Treasury and him only to abate or refund duties attaching to imported merchandise damaged, injured, or destroyed while in customs custody

or while within the limits of a port of entry.     No appellate power was given to any Federal court to review decisions made under that section, and the refusal of the Secretary to rebate or refund duties must be regarded as final and not subject to review by any other tribunal.   (Ferry & Co. *v.* United States, supra, 554, 557.) Probably arbitrary and capricious action on the part of the Secretary might have been corrected by mandamus proceedings, but certainly no remedy is afforded by way of appellate review.

In Mills & Gibb *v.* United States this court was called upon to construe that part of paragraph I of section 3 of the act of October 3, 1913, which reads as follows:

\*        \*        \*        \*        \*        \*        \*

The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement.   \*   \*   \*

We there held that the collector had no power to assess duties on less than the entered value unless otherwise directed by the Secretary and that the refusal of the Secretary to direct an assessment at less than the entered value was not subject to review either by the Board of General Appraisers or by the Court of Customs Appeals.   Mills & Gibb *v.* United States (8 Ct. Cust. Appls. 31–36, 37; T. D. 37164). The reasoning of that case is applicable to this case, and we are compelled to hold that the relief sought by the protest against the decision of the collector, *which decision he was bound by law to make,* can not be granted.

The decision of the Board of General Appraisers is therefore *affirmed.*