UNITED STATES *v.* HABICHT (No. 10).[1]

1. NONIMPORTATION.

Merchandise the usefulness of which as a commercial commodity has been entirely destroyed and that has been condemned and destroyed as unsahitary is not an article of merchandise of value imported into this country and can have no dutiable status.

2. PROCEDURE AS TO NONIMPORTATION.

Where an importer has removed in bond to his own warehouse a consignment of merchandise, and it is there found that more than 10 per cent of the consignment had been rendered in transit totally valueless he is not remitted as of course to proceeding alone under section 23 of the customs administrative act of 1890, but may seek his remedy as well by protest under section 14 of the same act.

[1] Reported in T. D. 31031 (19 Treas. Dec., 1105).

3. GLACÉ FRUIT, WHEN A NONIMPORTATION.

The facts disclosing that 29 cases and 59 boxes of glacé fruit, more than 10 per cent of the entire consignment, were entered in a wholly worthless condition, there was no importation as to this portion of the merchandise, and the importer complying with all conditions as to recovery is entitled to the relief he demands.

4. BOND AND PENALTY.

The penalty of a bond given for the return of goods not examined by customs officials is not enforceable in a proceeding of this kind, the court declining to assume jurisdiction of questions arising out of the alleged breach of the conditions of such a bond.

## United States Court of Customs Appeals, October 28, 1910.

APPEAL from the Board of United States General Appraisers, G. A. 6700 (T. D. 28651), to the United States Circuit Court for the Southern District of New York (T. D. 29768); thence to United States Circuit Court of Appeals and transferred.

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

*McLaughlin, Russell, Coe & Sprague* for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal from a decision of the United States Circuit Court for the Southern District of New York (171 Fed. Rep., 441), in which that court reverses a decision of the Board of United States General Appraisers, which affirmed an assessment of duty as made by the collector of customs at the port of New York. The merchandise consisted of glacé fruit imported at that port in December, 1906; the shipment consisting of 41 cases. Duty was assessed by the collector upon the total number of cases included in the shipment. Within 10 days after entry the importer served notice upon the collector that 29 cases and 59 boxes of the fruit had arrived in a damaged condition, that they constituted over 10 per cent of the entire shipment, and asked to abandon the goods. The application was duly received and an examiner from the appraiser's office designated to examine the goods. Previously the goods had been sent to the place of business of the importer under bond. This was a general bond, such as is customarily given for the delivery of goods to importers, covering this and such other merchandise that they might import for a period of six months and containing the stipulation that any of the goods imported thereunder would—

within 10 days after the package or packages designated by the collector and sent to the public store to be opened and examined have been appraised and reported to him be returned to the order of the collector without having been opened except with the consent of the collector or surveyor, given in writing, and then in the presence of one of the officers of the customs.

When the examiner appeared at the place of business of the importer he found that the packages had already been opened and the goods taken out; whereupon he made return of such conditions through the appraiser to the collector, in response to which the collector reported to the importer—

that the merchandise could not be identified for the reason that the package had been opened and the contents distributed before the examination could be made,

and hence the application was rejected.

Within 10 days, however, after the decision of the collector as to the amount of duties charged upon the importation, and not before such ascertainment and liquidation of duties by the collector, the importer duly made protest against the exaction of an undue amount of duties, setting forth distinctly and specifically the reasons of his objection in that "29 cases and 59 boxes of importation of 41 cases of said fruit were totally destroyed for merchantable purposes before importation." Said claim was made under and by virtue of section 14 of the customs administrative act of 1890, as amended July 24, 1897, and no objection is made to the form or timeliness of such protest.

The protest is based upon two grounds:

First, it is alleged that the "merchandise was damaged by sea water during the voyage of importation, thus causing fermentation and decay of the fruit, whereby the contents of 29 cases and 59 boxes were totally destroyed for merchantable purposes before importation, and the same had to be thrown away as worthless."

Second, 29 cases and 59 boxes of the merchandise were damaged, and permission was asked to abandon to the Government this quantity of the fruit under the provisions of section 23 of the tariff act of 1897, and tender made to establish by proof in conformity with the legal rules of evidence the facts alleged in the protest.

Upon the hearing before the Board of United States General Appraisers the protest was overruled on both grounds, and upon appeal to the United States Circuit Court for the Southern District of New York the decision of the board was reversed.

Appeal was taken to the United States Circuit Court of Appeals for the Second Circuit and the case comes here from that court.

Fundamental to an intelligible consideration of the case an inquiry into the established facts is essential. The main question of fact is whether or not the merchandise could be considered as destroyed or unsuitable for commerce before importation, and hence a nonimportation; or whether or not it should be considered an importation of merchandise which was merely damaged.

The Board of General Appraisers found its condition in the following language: "The testimony shows that the merchandise which has

been wet was entirely valueless, condemned by the health officers, and destroyed." The Circuit Court for the Southern District of New York reached the same conclusion as the basis of its decision.

While the 29 cases and 59 boxes seem to have been in the original packages upon arrival, an examination of the record convinces us that they were undoubtedly worthless as articles of commerce. They were, in fact, condemned by the health officers of the city of New York and destroyed. It is fairly shown from the record that at the time they entered the customs district they were in the condition as found by the Board of General Appraisers. We have no hesitancy in approving this finding as in complete accord with the facts and decisions of the highest courts. In Lawder v. Stone, collector (187 U. S., 281), the importation was a cargo of pineapples at the port of Baltimore. Part of the cargo decayed en route, was condemned by the health officers of the city of Baltimore, and destroyed. The Supreme Court in deciding the case refers to various decisions, not only of the courts but of the Treasury officials and Board of General Appraisers, and the statutes from the commencement of the Government to date. It lays down the following principles as to what constitutes nonimportation:

The doctrine * * * clearly supports the proposition that it would be inequitable and presumably not within the intention of Congress to assess duty upon an article which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay, or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption. In other words, that articles thus circumstanced were not in truth within the category of goods, wares, and merchandise imported into the United States, within the meaning of the tariff laws. The ruling in Marriott v. Brune was approved and applied in United States v. Southmayd (9 How., 637), * * * and it has been consistently recognized by this court that as a general rule *duties are intended to be levied only upon the value of goods which possess some intrinsic or other value at the time when ordinarily the duty would attach on an article.*

And further the court, at page 293, says:

The reference in section 23 to an allowance for "damage," and the provision that the abandoned portion of cargo should "be sold by public auction or otherwise disposed of for the account or credit of the United States," manifestly imports that it related to an article which, *when the duty attached, was possessed of some value,* and therefore negatives the idea that Congress was concerning itself with that which was destitute of all value. When, therefore, it was enacted that in a certain contingency no allowance should be made for "damage to goods, wares, and merchandise imported into the United States," it is reasonable to construe this language as not referring to *an article, case, or package which, though in the semblance of merchandise, had become absolutely valueless* by reason of natural causes or casualty occurring thereto while the article, case, or package was in transit to the United States.

There seems no escape from the conclusion that this merchandise, the usefulness of which as a commercial commodity was entirely

destroyed, and which was condemned and destroyed as insanitary, should not be held to be an article of merchandise of value imported into the United States. We fully approve the finding of the Board of General Appraisers upon this point.

It was, however, held by the board that by reason of the fact that the merchandise had been unpacked by the importer without calling in a customs official, in violation of the terms of the bond mentioned, that the importation should not be treated as a nonimportation, for the reason that it had passed into the limits of the United States and entered conditionally into the commerce. If, as is conceded by all parties, at the time the merchandise entered the customs district it was worthless, and hence a nonimportation or shortage and nondutiable, we are unable to conceive how any subsequent act of the importer not changing its valueless character could restore it to a dutiable status. We are of the opinion that at least the importers' first ground of protest is well taken.

The statutes and Treasury regulations made in conformity therewith contemplate two conditions affecting merchandise such as this: First, merchandise that has been damaged but not entirely destroyed, but which still possesses some commercial value and, secondly, merchandise, or a portion thereof, which had been commercially destroyed before it was brought within the customs district.

For the enforcement of the rights of the importers in these cases Congress has specifically prescribed methods of procedure. That Congress has plenary power in this particular has been uniformly held from the foundation of the Government. It has never been seriously disputed that in matters of claims against the United States full power rests in Congress to determine and legislate exactly as to the methods of determination of these controversies, and the modes prescribed by Congress measure the rights of the citizen.

Thus in Nichols *v*. United States (74 U. S., 7 Wall., 126) the Supreme Court said:

The immunity of the United States from suit is one of the main elements to be considered in determining the merits of this controversy. Every government has inherent right to protect itself against suits, and if, in the liberality of legislation, they are permitted, *it is only on such terms and conditions as are prescribed by statute.* The principle is fundamental, applies to every sovereign power, and but for the protection which it affords, the Government would be unable to perform the various duties for which it was created. It would be impossible for it to collect revenue for its support without infinite embarrassments and delays if it was subject to civil processes same as a private person.

This case was expressly approved in Dooley *v*. United States (182 U. S., 222), wherein the Supreme Court points out that by virtue of the customs administrative act of 1890, further enlarged jurisdiction

in this particular was given and an appeal provided. To the same effect is Schillinger v. United States (155 U. S., 166), wherein the court said:

The United States can not be sued in their own courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and the contingencies in which the liability of the Government is submitted to the courts for judicial determination. *Beyond the letter of such consent the courts may not go;* no matter how beneficial they may deem, or in fact might be, their possession of a larger jurisdiction over the liabilities of the Government.

In the matter of imposts collected upon a nonimportation of merchandise, or upon merchandise which was damaged at the time of importation, two provisions have been prescribed by Congress.

Section 23 of the customs administrative act of 1890, as amended July 24, 1897, prescribes a method of relief for the importer for the recovery of duties paid upon merchandise which has been *damaged*. It is expressly provided in that section that such a recovery shall be had after compliance with the rules and regulations made by the Secretary of the Treasury for the enforcement of such rights.

Section 14 of the same act provides a remedy for the importer in all cases where the *rate* or *amount* of duty exacted upon imported merchandise is deemed by him excessive.

It seems that the importer in this case endeavored to invoke both remedies. Inasmuch, however, as he had taken the goods into his possession and opened them before they were inspected by a customs official, in violation of the statutory bond given, he abandoned procedure under the provisions of section 23 of the customs administrative act.

But, as before stated, in due time he proceeded by protest under the provisions of section 14 of the customs administrative act. Under that provision there is no statutory regulation of which we have been advised which prescribed the performance of any condition precedent to that of the filing of protest by the importer and asserting of his claim in this manner for the refund of excessive duties paid, except the payment of the full amount of the ascertained duties, which was done in this case.

There is nothing in the case of D. M. Ferry & Co. v. United States (85 Fed. Rep., 550), Circuit Court of Appeals for the Sixth Circuit, opinion written by Taft, circuit judge, which expressly or impliedly denies the right of the importer to proceed under section 14 of the customs administrative act for the recovery of an excessive amount of duties paid by reason of a nonimportation or shortage, provided he proceeds in due time and under the provisions of that law. On the contrary, the plain and explicit intimation in that decision, as well as in the case of Nichols v. United States (74 U. S., 7 Wall., 126),

relied upon and quoted in the Ferry case, is that the importer in such cases has the right to proceed by protest, as provided by law.

In the Ferry case the goods had been imported but were destroyed thereafter in the warehouse of the importer while a bond to return them upon demand to the custody of the collector was in existence. The importer made due claim before the Secretary of the Treasury for relief under section 2984 of the Revised Statutes, a special procedure, similar to that of section 23 of the customs administrative act of 1890, and that being rejected proceeded by petition in the United States circuit court. The court of appeals held that there was no jurisdiction in the circuit court to review the decision of the Secretary of the Treasury, as the statute had confided in the Secretary, under section 2984 of the Revised Statutes, the power to grant relief in such cases, and inasmuch as the importer had invoked that procedure the decision of the Secretary could not be reviewed by the courts for want of statutory authority.

The court, in commenting upon Nichols *v.* United States and following the same, specially emphasized the fact that no protest had been filed in accordance with the customs administrative act, and stated the facts of the Nichols case to be as follows:

A portion of the liquor had leaked, and, being lost, was, in fact, *never imported at all into the United States. The importers made no written protest, as required by the customs law of the United States,* but some five years afterwards filed a petition in the Court of Claims.

The court then quotes the Nichols case as to the authority of Congress to confide in special tribunals methods of procedure in such cases, and emphasizes the language of the Supreme Court in the Nichols case, wherein it is stated:

If the importer does not protest, his right of action is gone.

In the Nichols case it was distinctly held that in the case of nonimportation of merchandise the remedy was by protest.

In the case of *damage* to merchandise the remedy is to proceed under the provisions of section 23 of the customs administrative act, because that remedy is by the terms of the law made exclusive for such rights. In the Ferry case the court held that because of the peculiar conditions of the case, to wit, that the merchandise was destroyed while in the custody of the importer after importation, and the importer having undertaken the remedy provided by section 2984 of the Revised Statutes, and that remedy alone, the decision of the Secretary was final. Indeed that was the exclusive remedy and the court later said being denied no recovery was possible.

The court in the Ferry case, however, in no case holds or intimates that in a case of nonimportation the importer could not proceed by

timely protest in due form.    On the contrary, it quotes the Nichols case, which plainly holds that that is the only remedy in such cases. And this was the view later by the circuit court in this case.

In the second instance, certain preliminary steps are prescribed by section 23 of the customs administrative act and other cognate statute and regulations before the importer can duly demand relief.    In the absence of any conditions precedent, statutory or regulative, other than that cited, and in the presence of a nonimportation of the whole or any part of the cargo, the importer undoubtedly has the legal right to proceed by protest, and when proof of the necessary facts therein alleged is sustained before the proper tribunal is entitled to a refund accordingly.    The Board of General Appraisers having found that in this case the 29 cases and 59 boxes were totally worthless, we see no escape from the conclusion that there was a nonimportation as to that portion of the merchandise, and that the importer having complied with all conditions as to recovery is entitled to the relief demanded.

It is insisted by the Government in its brief, however, that the fact that the importer had violated his bond, which was a general one covering all importations he might make for a period of six months, should operate as an equitable estoppel in the assertion of this protest. The circuit court did not concur in this view, and we are of the opinion that the circuit court was correct.    Demonstration of this can be had, it seems to us, by considering the legitimate sequence of such a view by this court.    This court by such a holding would proceed to determine the rights as between the Government and the importer upon a bond of which in this proceeding, at least, it concededly has no jurisdiction.    Furthermore, the determination by this court that the penalty for a violation of this bond, if it were violated, by the importer should be the amount of duties paid upon this merchandise would be the fixing of a penalty against the importer and in favor of the Government, which is in no sense authorized by the terms of the bond. This court, in our opinion, can not assume jurisdiction of questions arising upon this bond or proceed to measure out a penalty for a violation thereof.    Counsel for Government has apparently recognized in his brief that such a holding could not be arrived at except upon a strained equitable basis, and stated that if the Government can not recoup in this proceeding it has no remedy.    If equity is to be administered in the premises, it would be in a proceeding upon the bond direct, and if it be found in such or in this proceeding that the Government by reason of the character of the bond or otherwise, is without remedy, that is a matter for the Congress or, perhaps, the Secretary of the Treasury, who has the plenary power of making regulations affecting the collection of the customs.    It is not within the province of this court to repair or make statutes or regulations.

The decision of the circuit court is affirmed.