THOMAS & PIERSON *v.* UNITED STATES (No. 878).[1]

GOODS LOST AFTER PAYMENT OF DUTY.

Duty had accrued on these goods before delivery to the importer. By request he was given permission to unload over the vessel's side, at his own risk, and the goods passed thus out of the custody and control of the customs officers. Loss occurred by sinking in consequence of a collision after payment of duty thereon and after the receipt of the merchandise by the importer. Subsection 22 of section 28, tariff act of 1909, that provides abandonment as an additional remedy, clearly imports that the goods sought to be abandoned thereunder shall be at that very time deliverable. These goods, lost as described, were of course not deliverable, and under the facts it would have been gratuitous to give notice requiring delivery.

United States Court of Customs Appeals, March 21, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7329 (T. D. 32273).

[Affirmed.]

*Francis E. Hamilton* for appellants.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

On December 27, 1910, appellants imported and entered at the port of New York a quantity of merchandise consisting of 4,000 bags

[1] Reported in T. D. 33305 (24 Treas. Dec., 483).

of chicory and 21 bales of paper. This merchandise arrived on board of the steamship *St. Andrew*. Separate entries were made, and in each case the usual 10-day bond was given in order to secure immediate delivery. At the same time the importers made a request in writing to the collector, as follows:

Permission is hereby requested to unload over the side of the vessel, at owner's risk, after 15 per cent has been placed on wharf for test by United States weighers.

This request was granted and the merchandise was, between the 27th of December, 1910, and January 5, 1911, actually delivered over the vessel's side on board of the lighter *Eagle*, and passed out of the custody and control of the customs officers.

The lighter, with the 4,000 bags of chicory, was on January 5, 1911, run into by the steamship *Prinz Eitel Frederich*, in the North River, which resulted in dumping the deckload of 2,916 bags of chicory into the river. The lighter was towed into Hoboken dock with 1,084 bags of chicory still on board. It was removed to the dock.

On January 5, 1911, notice of abandonment of the entire 4,000 bags was served on the collector, on account of the loss of about 3,000 bags by sinking of the lighter *Eagle*.

On January 18, 1911, the Board of Health of Hoboken condemned the 1,084 bags of chicory (which were saved out of the 4,000 bags) and destroyed the same as unfit for human food.

The amount of duty on the 1,084 bags of chicory, amounting to $1,665.24, was refunded by the collector, and refund was refused on 2,916 bags. On April 7, 1911, the importers filed the present protest.

As to the paper, 21 bales arrived on board the steamship *St. Andrew* on December 27, 1910. One bale was sent to the public stores for examination. A delivery permit was issued for the remaining 20 bales. They were delivered from the steamer *St. Andrew* to the dock and thence were removed to the lighter *Eagle*, which had on board the chicory as well as the 20 bales of paper. The paper was washed off the deck of the lighter and was, with 2,916 bags of chicory, lost overboard at the time of the collision in the North River on January 5, 1911. On January 6, 1911, the protestants served on the collector a notice of abandonment of the paper, claiming under subsection 22 of section 28 of the act of 1909.

The Board of General Appraisers overruled the protests, and the importers appeal.

It is fair to assume that the goods which were lost overboard are not recoverable. Indeed the notices of protest which appear in the Government's brief indicate that such was the view of the importers when the notices of abandonment were filed.

Compiled Statutes, section 2984, provides for abatement and refund in case of injury by casualties. Its provisions were:

The Secretary of the Treasury is hereby authorized, upon production of satisfactory proof to him of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty while the same remained in the custody of the officers of the customs in any public or private warehouse under bond or in the

appraisers' stores undergoing appraisal, in pursuance of law or regulations of the Treasury Department, or while in transportation under bond from the port of entry to any other port in the United States, or while in the custody of the officers of the customs and not in bond, or while within the limits of any port of entry and before the same have been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, out of any moneys in the Treasury not otherwise appropriated, the amount of impost duties paid or accruing thereupon; * * *.

This statute was construed by the Circuit Court of Appeals in the case of Ferry & Co. *v.* United States (85 Fed., 550), and it was said:

We think that section 2984, in referring to the custody of the customs officers, means the actual manual possession and control by those officers of the merchandise in question, and that, when it is delivered under bond to the importer, no matter what his obligation to return the same upon demand, it is in his custody, and not in the custody of the officers of the Government. The reason of the statute requires such a construction. Its equity lies in the injustice of compelling an importer to pay duty on merchandise destroyed before it reaches his control and before he can exercise any care with respect to its preservation. When, however, the property is delivered to him, to be kept in his own warehouse, under his complete control so far as preservation from injury by fire is concerned, there is no reason why he should not suffer a loss arising from a destruction of the property in his possession exactly as he does one from injury to other merchandise in his possession. The duties, then, are to be considered a part of the cost and value of the property to him. If the property had been appraised and he had paid the duties, there is no question but that he could not look to the Government to refund to him the duties paid after its destruction by fire. We do not see that the giving of the bond changes the equity of the situation in any respect.

The present claim is based upon subsection 22 of section 28 of the act of 1909, and the provisions of that section relied upon by the importer are as follows:

Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, wares or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided, further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part.

All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrivals as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe at the expense of such importers.

There is no doubt that the duty had accrued upon these goods before delivery to the importer. See United States *v.* Habicht (1 Ct. Cust. Appls., 53; T. D. 31031) and cases cited; United States *v.* Shallus (2 Ct. Cust. Appls., 332; T. D. 32074). As to whether the remedy afforded by subsection 22 is a substitute for section 2984 need not be determined. It provides for an additional remedy, namely, that of abandonment. But the analogy between that statute afford-

ing a remedy by refund in the case of goods destroyed and that of subsection 22, authorizing abandonment, is complete. Subsection 22 does not extend the right of abandonment to all goods imported. But the paragraph clearly imports that abandoned goods shall be at the time of abandonment deliverable goods. Delivery is provided for in the paragraph and this presupposes a deliverable condition. These goods were at the bottom of the river at the time of the proposed abandonment. It needs no evidence to demonstrate that they were not deliverable. It is also apparent that any notice requiring delivery would have been idle and absurd. It is true no notice was given by the collector to the importers to deliver these goods. But the stage requiring notice of delivery had not been reached. The evidence before the collector of the notice of abandonment was that the goods were lost overboard. There was no occasion, therefore, to require delivery of goods which could not be delivered. It was essential that the importers tender first the delivery of these goods or serve notice of abandonment, which would indicate their willingness to deliver, before the collector was required to act upon the notice of abandonment at all, and if at that stage it was apparent that a notice to deliver would be idle, we think no additional right accrued to the importer by failure on the part of the collector to give such notice. See also Lawder v. Stone (187 U. S., 281).

The question as to whether the right of abandonment extends to goods damaged after importation is not discussed and is not considered.

The decision of the Board of General Appraisers is *affirmed*.