AGENCY CANADIAN CAR & FOUNDRY CO. *v.* UNITED STATES (No. 2059).[1]

1. CONSTRUCTION, PARAGRAPH M, SECTION IV, TARIFF ACT OF 1913 AND ARTICLES 709, 710, 747, 748, AND 749, CUSTOMS REGULATIONS 1915.

An oral application to the deputy collector of customs in charge of bonded manufacturing warehouses for the establishment of such a warehouse is not a compliance with paragraph M, section IV, tariff act of 1913, prescribing the mode of establishing such warehouses and articles 709, 710, 747, 748, and 749, Customs Regulations 1915, promulgated pursuant thereto.    Under such circumstances it can not be said that *any* application was made.—Agency Canadian Car & Foundry Co. *v.* United States (10 Ct. Cust. Appls. 172; T. D. 38547).

2. IMPORTATION.

Merchandise, entered for consumption and brought into this country for the purpose of being manufactured here and exported, is imported and subject to duty.—Agency Canadian Car & Foundry Co. *v.* United States (10 Ct. Cust. Appls., 172 : T. D. 38547).

3. IMPORTATIONS TO BE EXPORTED DESTROYED BY FIRE.

Appellant was accustomed to import merchandise, pay the duties, manufacture it, and export it, taking the drawback.    Some of such merchandise was destroyed by fire.    He can not escape the payment of duties on it, notwithstanding that the deputy collector may have arbitrarily denied his oral application for the establishment of a bonded manufacturing warehouse and notwithstanding that he may have intended that it should not enter into the commerce of this country.—Agency Canadian Car & Foundry Co. *v.* United States (10 Ct. Cust. Appls., 172; T.D. 38547).

4. PARAGRAPH X, SECTION III, TARIFF ACT OF 1913—ABANDONMENT AND DELIVERY OF IMPORTED MERCHANDISE.

Imported merchandise can not be abandoned under paragraph X, section III, tariff act of 1913, unless it be deliverable at the time of the abandonment.—Thomas & Pierson *v.* United States (4 Ct. Cust. Appls., 51; T. D. 33305). · It was the intention of Congress that abandonment should not be permitted unless the merchandise was still in esse in a deliverable condition.    Appellant maintained a factory for the purpose of manufacturing artillery ammunition for the Russian Government.    In the factory were shells of Canadian manufacture upon which duty had been paid, and shells of domestic manufacture.    These shells were practically destroyed by fire and explosion.    Appellant lodged with the collector a written notification of abandonment of the Canadian shells, but when called on for delivery, was unable to comply for the reason that the identification marks on the Canadian shells had been obliterated or the shells themselves destroyed.    There was no valid abandonment.

5. ADMINISTRATIVE PRACTICE, FORCE OF.

The fact that the collector had not customarily demanded or accepted delivery of abandoned imported merchandise is of no avail to an importer in a case where he did demand delivery and delivery was impossible.

---

[1] T. D. 38637.

United States Court of Customs Appeals, February 17, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8351 (T. D. 38445).

[Affirmed.]

*Allan R. Brown* (*Gerry & Wakefield* of counsel) for appellant.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States

[Oral argument Jan. 27, 1921, by Mr. Brown and Mr. Gerry and Mr. Baldwin.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consisted of empty high-explosive artillery shells which were imported in carload lots from Canada. They were destined for use in a shell loading and assembling plant which was maintained by the importers at Kingsland, N. J., where they were to be loaded and otherwise finished as ammunition for delivery to the Russian Government. The plant at Kingsland was an enormous establishment covering many acres of ground; it was in use by the importers as one of their agencies in carrying out an extensive contract with the Russian Government for furnishing it with a vast quantity of artillery ammunition. In this transaction great numbers of partly finished shells were brought to the plant to be loaded, most of them being of domestic manufacture, others being of Canadian origin.

This case relates to seven entries of Canadian shells, and these arrived at Newark, N. J., a subport of the port of New York, between the dates of January 3, 1917, and January 9, 1917. They were there entered for immediate consumption and a deposit of duty equal to the appropriate rate of 20 per cent ad valorem was made with the collector, who thereupon issued permits of delivery and relinquished control of the merchandise to the importers. The cars containing the shells were then immediately moved by the importers to the plant at Kingsland for use as aforesaid.

On January 11, 1917, only two days after the last of these entries, an explosion and fire took place at the Kingsland factory, and the entire plant, including the materials in the warerooms and in cars upon the yard tracks, was destroyed. The shells now in question were at the plant at this time and shared in the general destruction.

On January 13, 1917, within 10 days after the date of the entries aforesaid, the importers lodged with the collector a written notification that they thereby abandoned to the Government all of the merchandise covered by them in accordance with paragraph X, section III, tariff act of 1913. A copy of that paragraph follows later in this decision.

Upon receipt of this notification the collector directed the importers to deliver the merchandise which they proposed to abandon to the seizure room at 641 Washington Street, New York City. The

importers, however, made no delivery in response to this demand. The collector then held that the failure of the importers to deliver the merchandise thus demanded was a default upon their part, and because thereof and also because the merchandise according to his, finding had been totally destroyed and was no longer capable of identification or delivery, the collector disregarded the alleged abandonment and proceeded with the final liquidation of the entries as in due course.

Thereupon the importers filed a protest against the collector's action, challenging it upon two grounds. They first claimed that the merchandise in question was not an importation into this country within the purview of the tariff laws, and that it was not legally liable to be assessed with customs duties, since the shells were brought here under the contract aforesaid with the Russian Government for immediate loading and exportation, and were not intended to enter into the commerce of the country. It was also claimed in this behalf that the importers had theretofore applied to the authorities for the privileges of a bonded manufacturing warehouse for this purpose, and that this request had been unlawfully refused, whereby they had been compelled to rely upon the drawback privileges of the act as their only practical relief under the circumstances. The second claim made by the importers in the protest was based upon the alleged abandonment of the merchandise as above set out.

The first branch of the protest is concededly identical with the issue decided by this court in the case of Agency Canadian Car & Foundry Co. *v.* United States (10 Ct. Cust. Appls., 172; T. D. 38547). That case, however, related to shells which had been entered in the same manner as these and for the same purpose but more than 10 days prior to the time of the explosion. For that reason no tender of abandonment was made with reference to them. The sole issue, therefore, in the former case was whether the merchandise had become liable to customs duties as imported merchandise within contemplation of the tariff laws. Upon this issue the court held against the claim of the importers, and the protest was overruled. The question of abandonment, however, not being involved in the former case was of course not passed upon, and it remains as the sole issue before the court upon this appeal.

The present protest was submitted to the Board of General Appraisers upon testimony including the record in the former case, and the board overruled it. From that decision the importers appeal.

The following is a copy of the applicable parts of paragraph X, as above cited:

Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, wares, or

merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided*, That the portion so abandoned shall amount to 10 per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares, or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided further*, That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part. All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the directions of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of such importers.

It will be noted that the statute just copied provides that all merchandise abandoned to the Government by importers shall be delivered by them at such place within the port of arrival as the chief officer of customs may direct. The provision follows that in case of failure of the importers to comply with the directions of the collector or chief officer aforesaid the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of such importers.

This court has held in the case of Thomas & Pierson v. United States (4 Ct. Cust. Appls., 51, 54; T. D. 33305) that these provisions conclusively imply that an abandonment can not be effected under the statute unless the merchandise in question be "deliverable" at the time of the abandonment. The merchandise involved in that case was 2,916 bags of chicory lost overboard from a lighter in New York Harbor in consequence of a collision, after the payment of the duties thereon and the delivery of the merchandise to the importers. No effort was made to recover the chicory which presumably would have had no commercial value if recovered. But the importers tendered an abandonment thereof to the Government under paragraph X, supra. The collector, however, refused to accept the proffered abandonment, and upon protest his action was sustained by the board. On appeal to this court the board's decision was affirmed, the court's decision reading in part as follows:

Subsection 22 does not extend the right of abandonment to all goods imported. But the paragraph clearly imports that the abandoned goods shall be at the time of abandonment deliverable goods. Delivery is provided for in the paragraph and this presupposes a deliverable condition. These goods were at the bottom of the river at the time of the proposed abandonment. It needs no evidence to demonstrate that they were not deliverable.

It may be observed that in the foregoing case the good faith of the importers was not questioned, nor was there any doubt entertained

as to the loss of the merchandise.  The collision indeed had taken place it may be supposed in the very presence of the customs officials. But nevertheless the chicory was at the bottom of the river when its abandonment to the Government was proposed, and consequently it was not deliverable.  For that reason alone the tender of abandonment was held by the court to be inoperative.

In the present case likewise the good faith of the importers is of course above question, and the facts surrounding the transaction are beyond dispute.  Nevertheless, upon the record the board felt bound to hold that the merchandise in question was not "deliverable" at the time of the proposed abandonment, and accordingly overruled the protest.  A review of the record leads us to the conclusion that there is no escape from such a decision.

The testimony before the board, including that introduced in the former case as above noted, discloses that at the time of the explosion there were 1,359,443 high-explosive shells in or about the Kingsland plant, of which 1,078,265 were of domestic manufacture, and 281,178 were imports from Canada.  The importations now in question comprised 54,866 shells and constituted accordingly only about one-fifth of the Canadian shells at the plant, such shipments having been regularly received for some time preceding the explosion.  The individual shells of all kinds were severally marked when in process of manufacture in order that each shell might thereby be traced to its separate origin and to the consignment of which it was a part.

When the explosion and fire occurred this enormous mass of material was scattered far and wide, and only 43,630 shells were afterwards salvaged from the débris.  And these were so rusted, pitted, burned, and broken that all marks of identification were obliterated. It was therefore impossible to ascertain whether the salvaged shells were of domestic or Canadian origin, and if Canadian, whether they belonged to the present shipments or former ones.  In fact, it may fairly be understood from the testimony that there was no possibility of identifying a single salvaged shell or piece of débris as part of the present importations.  The 43,630 salvaged shells were sent by the appellant company to the Bethlehem Steel Co.'s plant at Newcastle, Del., where they were used in manufacturing Russian ammunition which was thereafter exported from this country.

We have therefore no primary or physical evidence whatever for the identification of any of the present importations after the explosion.  Nothing but secondary evidence is possible in answer to the question of what became of them.  They were simply blown out of existence so far as any possibility of a delivery of them was concerned, and for the purpose of the present inquiry they, like the chicory in the Thomas & Pierson case, *supra*, were no longer in esse.  Accordingly in the decision now under review the board, after referring to

the chicory case, rightfully said: "All that the court said of sunken goods is equally applicable to the merchandise here under discussion, which prior to the time of the tender of abandonment had been literally blown to atoms. It was not deliverable, to say the least." Such a situation is clearly distinguishable from that in the Doull Miller & Co. case, G. A. 7523 (T. D. 34032), wherein the abandoned merchandise was damaged but, nevertheless, was still capable of identification and delivery.

It must be conceded that the present case visits an undeserved hardship upon the importers, and we regret that the statute denies them the relief which they have sought under it. But it seems clear that Congress intended to permit of an abandonment of merchandise under the act only in cases wherein the merchandise itself was still in esse in a deliverable condition, and that no proof of the destruction of the merchandise should be accepted in lieu thereof, however conclusive such proof might be. If such secondary evidence were relied upon, it might in many cases be a means of defrauding the revenue, and this doubtless explains the imperative character of the rule as adopted.

The testimony discloses the fact that prior to this transaction it was not the custom of the collector at the port of New York to demand a delivery to the Government of goods which were abandoned under the statute, nor to take them into custody in event they were not delivered to him by the importers. We do not think, however, that this practice should have any effect upon the present question, since the course pursued by the collector in the present case was directly obedient to the statute and to the department's rules.—(Customs Regulations 1915, arts. 603, 604.)

In the former case growing out of this transaction, supra, we said:

The appellant has been the victim of a great misfortune, and the appeal is strong that it should not suffer the loss of its goods and the very large amount of duties paid thereon as well. Nevertheless, as the law has made no provision for the return of duties in such cases as this, the court is powerless to grant relief.

We can only repeat this observation and say that in the present case the impossibility of a delivery of the merchandise in question defeated the effort of the importers to abandon it to the Government, and the decision of the board to that effect should be, and is, *affirmed*.