(C. D. 488)

Ricard-Brewster Oil Co. *v.* United States

United States Customs Court, First Division

(Decided May 6, 1941)

*Tompkins & Tompkins (J. Stuart Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General *(Daniel I. Auster,* special attorney, for the defendant.

Before Brown, Walker, and Tilson, Judges; Walker, J., dissenting; Oliver, P. J., did not participate in the consideration or decision of this case

Brown, Judge: This suit against the United States was brought at the port of Philadelphia, Pa., to recover drawback claimed to have been illegally disallowed on a certain export of 20 drums of neat's-foot oil which was partly manufactured from imported duty-paid material.

At the trial in Philadelphia the following oral stipulation was entered into by counsel for the respective parties herein:

Paragraph One; The notice of intent number 3908 to export the merchandise in question, 20 drums of neat's-foot oil with benefit of drawback pertaining to drawback entry 449 (which paper we ask to have marked Exhibit 1) was filed with the Philadelphia Collector of Customs at 9:27 a. m. October 22, 1937.

Paragraph Two; said merchandise was weighed on the morning of October 22, 1937, by and under supervision of the customs inspector as shown by the paper herewith submitted which we ask be marked Exhibit 2, but the weighing was not made pursuant to notice of intent aforesaid but on general instructions contained in article 1053 of the Customs Regulations of 1937, as a precautionary measure in anticipation of drawback as is shown by letter dated March 16, 1938, which we ask be received as Exhibit number 3.

Paragraph Three; thereafter, at noon of October 22, 1937, this merchandise was laden on the steamship "Collamer", but not under customs supervision. The lading as of October 22, 1937, is shown by a certified copy of the ocean bill of lading which we ask be marked Exhibit 4.

Paragraph Four; during the morning of October 22, 1937, the customs inspector in charge of pier 98, was present on that pier. Said inspector did not receive from the collector's office the notice of intent number 3908 until 3:15 p. m. October 22, 1937.

Paragraph Five; the steamship "Collamer" sailed or cleared from the port of Philadelphia on October 23, 1937.

Papers referred to were received in evidence and marked as Exhibits 1, 2, 3, and 4.

With the approval of the court the following written stipulation, dated January —, 1939, was added to the foregoing oral stipulation:

Paragraph Six; The merchandise in question, 20 drums of neat's-foot oil, was manufactured partly out of imported duty-paid material, and all regulations of the Secretary of the Treasury with reference to drawback, with the possible exception of timeliness of notice of intent which is being contested in this suit, were duly complied with, drawback being denied solely because of what the Collector claimed was lack of timely notice of intent.

Charles A. DeBey was called in behalf of the plaintiff. The relevant part of his testimony merely repeated in greater detail the facts stipulated between counsel.

The testimony may be summarized as follows:

The witness, DeBey, on October 22, 1937, was receiving clerk for the agents of the steamship line handling the shipment here involved at pier 98, South Philadelphia, and signed the receipt (exhibit 5) for twenty drums of neatsfoot oil on which receipt was written

Have this shipment weighed.

He immediately sent the truckman with his load to the customs scale on the pier to be weighed, but was not present at the weighing and did not know of his own knowledge that the shipment was weighed.

The shipment was laden on the *Collamer* at about 12 o'clock noon, October 22, 1937. The *Collamer* sailed at about 9:30 p. m., October 23, 1937.

Government counsel objected to various parts of the testimony of DeBey moving to strike same. All of these motions were overruled

subject to final decision by the division. Sitting as a division, we hereby sustain the rulings of the sitting judge and admit the testimony of DeBey. It simply adds a few details to the facts as stipulated and makes somewhat clearer what happened. Exception is noted for the defendant.

Government counsel moved "to dismiss this protest on the ground that the plaintiff had not shown that the duties assessed by the collector were not due and owing to the Government." Motion was denied by the sitting judge on the ground that it seemed so intimately connected with the decision on the merits that it was reserved for final decision by the division. Sitting as a division we hereby deny the motion to dismiss on the ground that the question is not whether the duties assessed by the collector were properly due and payable to the Government but whether so much of these assessed duties as applied to the exported duty-paid merchandise was refundable to the plaintiff as drawback. Exception is noted for the defendant.

The record as a whole, to wit, the stipulations of fact entered into by counsel, exhibits 1 to 5 inclusive, and the relevant portions of the oral testimony of the witness DeBey, may be summarized as follows:

Notice of Intent to Export Articles with Benefit of Drawback, No. 3908, was filed with the collector of customs at Philadelphia at 9:27 a. m., October 22, 1937, on 20 drums of neat's-foot oil, showing gross weight of 9,622 lbs., Net weight 8,596 (exhibit 1); at about 10:00 a. m. of the same day 20 drums of neat's-foot oil, gross weight 9,622 lbs. were receipted for by the witness DeBey at pier 98, and which receipt (exhibit 5) bore the note "Have this shipment weighed": this shipment was immediately sent to the customs scale on the pier (Rec. p. 5 and p. 8); the shipment was there weighed by the Government inspector (exhibit 2) certifying the gross weight of the 20 drums of neatsfoot oil to be 9,600 lbs.; the shipment was laden, without Government inspection, on the S. S. *Collamer* at about 12:00 o'clock noon of the same day; the notice of intent was received at pier 98 at 3:15 p. m. of the same day (exhibit 1); the S. S. *Collamer* containing the 20 drums of neat's-foot oil, gross weight 9,622 lbs. (exhibit 4) sailed at about 9:30 p. m., October 23, 1937.

The merchandise in question, 20 drums of neat's-foot oil, was manufactured partly out of imported duty-paid material, and all regulations of the Secretary of the Treasury with reference to drawback, with the possible exception of timeliness of notice of intent which is being contested in this suit, were complied with, drawback being denied solely because of what the collector claimed was lack of timely notice of intent (Stipulation, par. 6).

From the record it is clear that the weighing of the merchandise in question by the customs inspector at the pier on the morning of October 22, 1937, was not pursuant to the formal notice of intent but

on general instructions contained in article 1053 of the Customs Regulations of 1937, as a precautionary measure. Why the precaution?

We think this is fully answered in the Reference Endorsement attached to the Certificate of Weight (exhibit 2) and which reads as follows:

F. 229, N/I 3908.

Reference Endorsement

United States Customs Service

District No. 11 Port of Philadelphia, Pa.

Respectfully referred to the Deputy Collector of Outside Div'n on request for further information with regard to non-inspection, in view of the fact that a weight was obtained—presumably on some form of notice.

(signed) R. REDFORD,
*Actg. Dep. Collector.*

That presumption is correct. The words "Have this shipment weighed" written on the dock receipt was a form of notice, irregular and perhaps technically defective, but notice to the customs inspector sufficient for him to take the precaution to weigh the shipment just as he would have done had he had a formal notice of intent, and it was sufficient to have led him to the precaution of inspecting the merchandise or at least to have deferred the lading until receipt of the formal notice of intent.

First and last, the merchandise was under control of customs inspectors at the pier for nearly 35 hours—from about 10:00 a. m., October 22, until 9:30 p. m., October 23. This was ample time for inspection and the lack of it cannot be charged against the plaintiff.

The customs inspectors at the pier were Government agents charged with the duty of carrying out the provisions of the law according to the intent thereof and not by neglect or indifference to thwart that intent.

The Supreme Court's view of the purpose of drawback statutes, for the stimulation of foreign trade as a part of our protective tariff system, is a liberal one which necessarily implies a liberal construction to be given the drawback statutes by the courts.

It was well expressed by Mr. Justice Miller in *Campbell* v. *United States*, 107 U. S. 407, a case asserting the then existing jurisdiction of the Court of Claims over actions for the recovery of illegally withheld drawbacks, a jurisdiction transferred to this court by section 514 of the Tariff Act of 1922.

At page 411 it is said:

The act of Congress having declared that on exportation there shall be allowed a drawback equal in amount to the duty paid on such material, and the Secretary having established by a regulation that, as regarded the cake resulting from the manufacture of the linseed into oil and cake, the latter represents at seventeen cents per hundred pounds the duty on the imported seed so converted into cake,

there resulted a contract that when exported the government would refund, repay, pay back, this amount as a drawback to the importer. If this be not so, it is because it is impossible to make a contract when the details of its *execution* or *performance* are left to officers who refuse to carry them out.

So it is equally clear that this claim is founded on the law allowing drawback.

The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury. This view cannot be sustained. It is the *law* which gives the right, and the fact that the customs officers refuse to obey these regulations cannot defeat a right which the act of Congress gives.

\*   \*   \*   \*   \*   \*   \* .

And at page 413:

A suggestion is made that the right to enforce the drawback in the court is affected by the fact that it is a gratuity.

It has never been supposed that there was a gratuity in all the cases where imports are free of duty. The purpose of the drawback provision is to make duty free, imports which are manufactured here and then returned whence they came or to some other foreign country—articles which are not sold or consumed in the United States. The linseed in this case was bought abroad and imported for the purpose of being manufactured, and the product immediately sent out of the country.

The drawback provision was simply a mode of making the linseed so imported and exported without distribution in the country duty free, and we see no gratuity in the case.

Applying the Supreme Court's liberal approach to a construction of the drawback statutes thus expressed it is difficult to imagine that Congress intended this drawback to fail in the circumstances appearing in this record.

The notice of intent to export this merchandise was filed with the collector of customs at 9:27 a. m. of October 22. Had it been sent at once to the inspector at the dock it would have reached him in ample time for him to have inspected the lading which took place on that day. The inspector did not receive it until about 3 p. m., after the lading had taken place. The vessel did not sail until the evening of the next day.

It is impossible for us to hold that the failure of the collector to forward the notice of intent at once to the inspector at the dock deprived the importer of his right to drawback, there being no real dispute that the imported material on which drawback is claimed was included in the export shipment. That would not be to give the drawback statute the liberal construction which the Supreme Court thinks it should receive, the sole contest being based on the question of receiving 6 hours' notice.

It is perfectly plain from the record that the imported material was in fact shipped abroad. Its identification is complete. This identification is the main purpose of all drawback regulations. Thus the drawback was earned. It is also perfectly plain from this record that the inspector at the dock knew, when he weighed the goods, that

they were drawback goods. That was the sole purpose of his weighing them. There could be no other purpose.

Moreover his so-called receipt which he sent with his report to the collector notes on its face that they were subject to drawback.

It is an elementary principle of law that requirements for notice before a certain time are solely for the purpose of seeing to it that the party who must act on the notice knows the fact in time. If such a party knows the fact from other sources that satisfies the fact of notice, and the lateness in filing the formal notice does not in such cases produce a default.

As what the notice said was already known to the Government officials it will not do as a matter of law for them to say:

We knew at the time of lading and did, or could, have fully protected the rights and revenue of the United States, but because you failed to file the formal notice in time we failed to have the lading under customs inspection in spite of the fact that we actually knew this was a drawback shipment and for that reason actually weighed the goods.

That sticks in the bark. It stands upon a bald technicality irrespective of the actual facts or the actual purpose of the regulations.

That catch should not deprive the citizen of his right to drawback here. It does not conform to the spirit of liberal approach to the drawback law which the Supreme Court expresses in the *Campbell* case.

That case is cited, not for an analogy of a factual situation, which was different from that before us, but for the liberal construction we should apply in construing the drawback law. Lower court decisions treating a drawback as a "gratuity" and defaulting a drawback for such failure of timely notice, when actual knowledge existed in those to be notified, do not militate against this view. It is the Supreme Court we must follow.

Judgment will issue sustaining the claim for the amount of the drawback withheld and directing the collector to refund same to the plaintiff herein.

### DISSENTING OPINION.

WALKER, Judge: I regret that I cannot concur in the decision and judgment rendered by my colleagues in this case. I deem a brief review of the material facts (as to which there is no dispute) essential to a statement of my views.

At 9:27 a. m. of October 22, 1937, a notice on customs Form 7511 of intent to export articles, to wit, refined neat's-foot oil, with benefit of drawback was filed on behalf of the plaintiff at the collector's office in Philadelphia. During that morning the shipment was delivered to the pier at which the exporting vessel lay. The receiving clerk for the agents of the steamship line signed the receipt therefor,

which was marked "Have this shipment weighed." The shipment was weighed on the customs scale on the pier and then was laden on board the export vessel. The lading was completed at 12 o'clock noon and was not done under customs supervision for the reason that the inspectors of customs at the pier had not received any official notice, either in the form of the original notice of intent or of a duplicate notice of intent that the goods were being exported for benefit of drawback. The original notice of intent filed in the collector's office was received by the customs inspectors at 3:15 p. m. of the same day. In accordance with article 1054 of the Customs Regulations of 1937 the customs inspector in charge certified on the back of the notice of intent that the shipment was not inspected nor laden under customs supervision for the reason that lading had taken place prior to receipt of notice but that the records of the steamship company showed that packages of similar description were laden on board the export vessel.

The existing drawback statute is section 313 of the Tariff Act of 1930. So far as pertinent it reads as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties * * *.

    *        *        *        *        *        *        *

(i) The Secretary of the Treasury is authorized to prescribe regulations governing (1) * * * the determination of the facts of the manufacture or production of such articles in the United States and their exportation therefrom * * *.

The regulations prescribed by the Secretary of the Treasury which was applicable to the shipment at bar were articles 1044 *et seq.* of the Customs Regulations of 1937, but the particular regulations pertinent to the issue under consideration are articles 1044 (*a*) and 1055. These read as follows:

Art. 1044. Notice of intent to export—Local or direct exportation from a seaboard or frontier port.—(*a*) At least 6 hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export on customs Form 7511. A duplicate copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent shall give the name of the exporting vessel, or in the case of a vehicle the name of the carrier, and place of lading, describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure.

    *        *        *        *        *    ·  *        *

Art. 1055. Failure to file notices of intent—Local shipments.—The failure to file a timely notice of intent with the collector, in accordance with the provisions of article 1044, shall not bar the payment of drawback, provided a notice of intent

is delivered to the inspecting officer as required, nor shall failure to deliver a copy of the notice of intent to the inspecting officer bar the payment of drawback, provided a timely notice of intent was filed with the collector, and provided further that no other act or omission on the part of the shipper, the carrier, or the agent or either, resulted in the failure to secure inspection.

It cannot be maintained that article 1044 (a) was complied with in the instant case since the notice of intent was not filed in the collector's office "at least 6 hours * * * before the lading of the merchandise to be exported" nor was "a duplicate copy of the notice of intent * * * delivered to the customs officer in charge at the place of lading."

Plaintiff cannot rely on article 1055. That article provides for two situations: (1) Where the notice of intent filed with the collector is timely but a duplicate notice of intent is delivered to the inspector as required by article 1044, and (2) where there is a failure to deliver a notice of intent to the inspector at the place of lading but the notice of intent filed with the collector is timely. In the case at bar it plainly appears that the notice of intent was untimely *and* that no duplicate notice was given the inspector at the place of lading. It cannot be denied that it was solely plaintiff's failure to comply with the regulations which occasioned the failure to have the goods laden under customs supervision and that no act or omission on the part of the customs officials aided in that result.

It has been suggested that the indorsement "Have this shipment weighed" on the dock receipt constituted sufficient notice to the customs inspector in charge at the pier to inspect the merchandise and supervise its lading or to defer the lading until receipt of a notice of intent, it being argued that to the knowledge of the inspector weighing of merchandise to be exported could be for no other purpose than drawback. This argument tacitly admits that the applicable customs regulations were not complied with and evidently proceeds on the theory that the regulations were not mandatory in character but merely directory or administrative and that proof of compliance therewith or proof of actual exportation might be made after the actual lading and exportation or before this court.

Regulations in all material respects the same in language and intent, being articles 859–863 of the Customs Regulations of 1915, prescribed under the authority of section 313 of the Tariff Act of 1922, the predecessor drawback statute to section 313 of the existing tariff law, were held to be mandatory in character so that strict compliance therewith was a condition precedent to the right of the claimant to recover under the drawback provisions. *Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459.

The facts in the *Spencer, Kellogg* case are very similar to those in the case at bar. There an oral notice was given the inspector at the place

of lading prior to the time the goods were taken on board the export vessel, and a written notice of intent was filed in the collector's office after such lading but prior to exportation. It appears also that although the goods were not laden under customs supervision the inspector later boarded the export vessel and saw the goods in the hold. The court said:

Reasonable regulations of the Secretary of the Treasury made in pursuance of law, have the force and effect of law. *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611, and cases therein cited; *Lunham* v. *United States*, 1 Ct. Cust. Appls. 220, T. D. 31258; *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 439, T. D. 37009; *United States* v. *Bracher et al.*, 13 Ct. Cust. Appls. 432, T. D. 41344.

The appellant does not contend that the involved regulations of the Secretary of the Treasury are unreasonable, but contends that they have been substantially complied with. In our opinion, the regulations requiring notice of intent to export are mandatory and compliance therewith is a condition precedent to the right of the appellant to recover under the drawback provisions. Such regulations may not be disregarded and proof of exportation made in some other manner than that required by them. *Lunham* v. *United States, supra; Agency Canadian Car & Foundry Co.* v. *United States*, 10 Ct. Cust. Appls. 172, T. D. 38547; *Agency Canadian Car & Foundry Co.* v. *United States*, 11 Ct. Cust. Appls. 19, T. D. 38637.

To the foregoing it may be added that the customs inspector in charge was under no duty to inspect merchandise intended for export except upon receipt of proper notice, or to defer lading, even assuming he had power and authority to do so. Nor was he under any duty, after the merchandise was laden, upon receipt of the notice from the collector's office to go aboard the export vessel and satisfy himself that the merchandise specified in the notice of intent was the merchandise actually on board the export vessel. Neither neglect nor indifference can be charged to the customs officials; whatever neglect or indifference has been manifested in the circumstances attending the exportation of the merchandise in issue are clearly chargeable to the plaintiff herein.

It has been likewise suggested that had the notice of intent filed with the collector been sent at once to the customs inspector in charge at the pier he would have had ample time to inspect the lading. This seeks to place the blame on the shoulders of the customs officials whereas in truth and in fact the plaintiff's failure to file a timely notice was the cause of the failure to inspect or supervise the lading. The regulations provide that 6 hours' notice must be given the collector's office. Notice was filed at 9:27 a. m. and reached the inspector at 3:15 p. m., or within 6 hours after filing. The requirement of the 6-hour leeway is doubtless to permit the notice to reach the inspector in the ordinary course of business. The collector was under no duty to dispatch the notice to the inspector at once upon its receipt, particularly when by the same regulation the claimant should have filed a duplicate notice with the inspector at the dock at the time the goods

were delivered to the exporting vessel. Here, again, the customs officers did all they were required to do, and the fault or omission lies with the plaintiff.

*Campbell* v. *United States*, 107 U. S. 407, 27 L. ed. 592, has been cited. The facts in that case were as follows: The claimants had imported linseed into the United States from India and had paid the import duty thereon. This was manufactured in the United States into linseed cake and all drawback regulations of the Secretary of the Treasury then in force and effect were complied with on the part of the claimants, including the giving of notice of intent to export at least 6 hours before lading. However, the collector, under instructions from the Secretary of the Treasury, refused to perform the acts required by the regulations on his part to be done, such as examining, identifying, weighing, etc. The question then presented was whether the collector's refusal to act could defeat claimant's recovery of drawback, and the court held it could not.

In the *Spencer, Kellogg* case, *supra,* the Court of Customs and Patent Appeals considered the decision of the Supreme Court in the *Campbell* case, and differentiated the two cases as follows:

\* \* \* In that case, the conditions precedent to the right of recovery had been performed. In this case, such conditions have not been performed; and in this vitally important respect, the cases are different.

In the opinion of the writer the *Campbell* case does not set forth a broader view of the rights of claimants under drawback law than that adopted by the Court of Customs and Patent Appeals. It is true that the Supreme Court said in the *Campbell* case that—

The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury. This view cannot be sustained. It is the *law* which gives the right, and the fact that the customs officers refuse to obey these regulations cannot defeat a right which the act of Congress gives.

What is the law which gives the right to recover? It is the drawback statute itself and reasonable regulations made under authority thereof which have the force and effect of law. It is said that the drawback provisions do not constitute a gratuity. In a later case, *Swan & Finch Co.* v. *United States*, 190 U. S. 143, 47 L. ed. 984, drawback provisions were held to be "a governmental grant of a privilege or benefit." Obviously, then, the privilege of exporting manufactured merchandise with benefit of drawback becomes a right to recover only upon compliance with the terms of the grant as expressed in the law and reasonable regulations prescribed under authority thereof.

The regulations in question, articles 1044 (*a*) and 1055, are not unfair or unjust nor are they productive of undue hardship. As was

said in *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, 455, T. D. 43199:

Such regulations would tend to avoid dispute, misunderstanding, and litigation. They would be as helpful to exporters and other interested parties as to the Government.

While it might be regrettable that the plaintiff in this case who, it is stipulated, actually exported the goods manufactured with the use of imported duty-paid material, should not recover, nevertheless the requirements may not be relaxed lest the very conditions the regulations were designed to avoid become the rule. In the *Nestle's Food Co.* case, *supra*, the court said:

Legal technicalities should not be given undue consideration, but the regulations under discussion are so obviously reasonable and fair, and so necessary to a proper determination of the matters mentioned in Section 313, that, as we said in the Spencer, Kellogg case, *supra*, compliance with them is a "condition precedent to the right of the appellant to recover under the drawback provisions. Such regulations may not be disregarded *and proof of exportation made in some other manner than that required by them.*"

This statement is applicable to the situation in the case at bar.

For the foregoing reasons judgment should issue overruling the protest herein.