## KENNEDY v. MAGONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 232. Submitted March 28, 1895. — Decided May 20, 1895.

A charge by the collector of customs at New York for storage in the public
store, for labor, and for cartage from the general-order warehouse to
the public store made upon uninvoiced and unclaimed goods under the
value of $100 sent to a general-order warehouse, and taken thence to a
public store for examination on the application of the owner, is a valid
charge authorized by law.

THE case is stated in the opinion.

*Mr. A. P. Ketchum* for plaintiffs in error.

*Mr. Assistant Attorney General Whitney* for defendant in
error.

MR. JUSTICE WHITE delivered the opinion of the court.

In April, 1888, the steamer Ohio arrived at New York, having on board two packages consigned to Thomas Cook & Son.
These packages were not invoiced, and, being unclaimed, were
sent by the custom-house authorities to a general-order warehouse. In October following, Kennedy and Moon, plaintiffs
in error, as assignees of the bills of lading for the merchandise, applied to enter the same. The application recited that the
contents of the packages were under one hundred dollars in
value. The merchandise was thereupon sent for examination,
by the collector's direction, from the general-order warehouse
to the public store adjoining the appraiser's office, where it remained for more than two days, when the goods were finally
passed and delivered. Before the packages were removed from
the general-order warehouse to the public store, the importer
paid the cost of hauling from the landing to the general-order
warehouse and for storage, etc., therein. On final liquidation
of the entry, seventy cents were demanded, that is to say, ten

cents on each package for storage in the public store, ten cents on each for labor, and fifteen cents on each for cartage from the general-order warehouse to the public store. This amount was paid by the owners under protest, and, after an appeal to the Secretary of the Treasury, suit was commenced for its recovery. At the conclusion of the evidence the court instructed a verdict in favor of the collector. The plaintiff brought the case here by writ of error.

The record leaves no doubt that the usage at the port of New York conformed with the regulations of the Treasury Department, in making the charges here involved, and that those charges are in themselves reasonable. The practice of the New York custom-house is thus stated in the record : " The rule is that on all packages that are sent into the appraiser's stores for examination or appraisement, there are storage and cartage, under appraisement orders, of free or defective invoices, and where there is no invoice. Ordinarily, on goods which are entered for consumption with an invoice, and on packages sent from the dock to the appraiser's building, there would be no charge at all for cartage, nor for storage either, if there was a straight invoice. A straight invoice is where an invoice describes the contents of each and every package, giving its value and all the particulars. An invoice which does not give the contents of each and every package is not a straight invoice. We call it a defective invoice. Upon goods entered upon such an invoice it is the practice of the government to exact storage charges." The same thing is stated in the record in another form : " When goods are imported into this port and entered by a straight invoice it is the practice to send to the public store for examination one package from each invoice at any rate, and at least one out of every ten. Sometimes all the packages are sent to the public store, but it is not usual. Where the importation or consignment is without an invoice and consists of a number of packages, all the packages, no matter how numerous, must be sent to the public store, because if there is no valuation given, then it is the appraiser's business to ascertain the amount."

This custom is the result of rulings of the Treasury Depart-

ment. Syn. Dec. 8993. See Customs Regulations, 1884, art. 618; General Appraiser's Decision No. 2825, November 16, 1894. The authority to make such regulation is here denied, but we think it clearly results from the law. Rev. Stat. § 2989. Viewing the matter, however, as a question of law, aside from the regulations, the validity of the charges here questioned is abundantly sustained.

As a general rule, an invoice is required for an importation. But merchandise may be admitted in certain cases by the Secretary of the Treasury without invoice, and "whenever the value of the imported merchandise does not exceed one hundred dollars, the collector may admit it to entry without the production of the triplicate invoice, and without submitting the question to the Secretary of the Treasury, if he is satisfied that the neglect to produce such invoice was unintentional, and that the importation was made in good faith and without any purpose of defrauding or evading the revenue laws." Rev. Stat. § 2859. For the purpose of appraisement the collector is empowered to designate on the invoice of importation a certain number of packages which are to be sent to the public store. Rev. Stat. § 2901. No charge is made for the transportation to the appraiser's office of the packages thus selected. When goods are unclaimed they are sent from the landing to a public store owned or leased by the United States, or to a general-order warehouse, or a private bonded warehouse, and "all charges for storage, labor, and other expenses accruing on any such merchandise, not to exceed, in any case, the regular rates for such objects at the port in question, must be paid before delivery of the goods." Rev. Stat. § 2965.

The whole controversy here turns upon the contention that, inasmuch as the packages were unclaimed, it was unlawful to subject the owners to charges for hauling them from the general-order warehouse to the public store, or for their storage in the public store and expenses there incurred. The argument is that, as the goods were under the value of one hundred dollars, and could therefore be entered upon proper showing without an invoice, they should not have been sent to the public

store, and thereby subjected to a greater charge than would have been imposed on goods which were regularly invoiced. But this contention overlooks the fact that invoice is the rule and admission without invoice the exception. The statute allowing the collector to admit without invoice imposes not an absolute but a discretionary duty upon him, for it says that he may do so "if he is satisfied that the neglect to produce such invoice was unintentional, and that the importation was made in good faith and without any purpose of defrauding or evading the revenue laws." It was of course competent for the collector on application for entry of uninvoiced goods to direct that they should be transferred from the general-order warehouse to the public store, to be there submitted to such detention and examination as was reasonable, to enable him to discharge this duty. While authorizing the collector to send uninvoiced goods to the public storehouse, the law expressly imposes upon the owner the expenses of storage, labor, etc., caused in such case. Rev. Stat. § 2965. The plaintiffs' case is based upon the mistaken idea that uninvoiced and unclaimed goods are in the same class as invoiced and unclaimed goods. In the one case the entry is permissive and involves judgment on the part of the collector, while in the other the right of the owner is subject only to the condition that a regular entry be made as required by law. The distinction is illustrated by other provisions of the statute; thus, although no charge is made for weighing, gauging, or measuring merchandise regularly invoiced "in all cases in which the invoice or entry does not contain the weight, or quantity, or measure of merchandise, now weighed or measured or gauged, the same shall be weighed, gauged, or measured at the expense of the owner, agent, or consignee." Rev. Stat. § 2920.

*Judgment affirmed.*