(C. D. 116)

H. L. GWALTER & CO., INC. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided March 6, 1939)

*Lane & Wallace* (*Thomas M. Lane* and *Samuel Isenschmid* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

### Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: In these suits against the United States the plaintiff claims that the collector of customs at the port of New York illegally assessed additional duty at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked when imported.

A written stipulation was submitted by the parties by which it was agreed that the following documents may be received in evidence:

1. Letters of the collector addressed to the assistant attorney general in each protest.

2. Reports of the solicitor to the collector in each protest.

3. A copy of a petition filed by or on behalf of the plaintiff with the Secretary of the Treasury on or about February 18, 1936, praying for the remission or mitigation of the 10 per centum marking duty under the provisions of section 618 of the Tariff Act of 1930.

4. A photoprint copy of a decision of the Acting Secretary of the Treasury denying said petition or application, dated July 31, 1936.

The latter two documents were marked Exhibit 1 and Exhibit 2, respectively.

An examination of the documents submitted indicates that the merchandise covered by the shipments consists of raw silk imported from Italy. Raw silk is not capable of being marked and the bales in which the silk was packed were not marked so as to indicate the country of origin of the contents. The importer filed a petition with the Secretary of the Treasury praying for the remission or mitigation of the duties under the authority of section 618 of the Tariff Act of 1930. Said petition was denied on the ground that the assessment under section 304 (b) was a duty and not a penalty and that section 618 did not give him the power or authority to remit or mitigate duties. That section reads as follows:

SEC. 618. REMISSION OR MITIGATION OF PENALTIES.

Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this Act, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Secretary of Commerce if under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage

a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, or the Secretary of Commerce, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any customs agent, collector, judge of the United States Customs Court, or United States commissioner, to take testimony upon such petition: *Provided,* That nothing in this section shall be construed to deprive any person of an award of compensation made before the filing of such petition.

The entries covered by the protests in this case were liquidated by the collector after the decision of the Acting Secretary of the Treasury on the petition for remission or mitigation of duties.

Counsel for the plaintiff, after calling attention in his brief to a statement on the entry to the effect that the petition for remission or mitigation of duties was denied by the Secretary of the Treasury, summarizes his contention in the following language:

Against this assessment the importers duly filed their protests claiming that the Collector's liquidations are illegal and void because they are based upon, involve or follow an illegal and void order or finding of the Secretary of the Treasury under section 618 of said act. Specifically, the claim is that the Secretary erroneously and illegally failed to consider and pass upon the merits of the petition made to him on behalf of the parties in interest for the remission or mitigation of the alleged liability because he erroneously and illegally held said liability was for "duties" and not for "penalties" within the meaning of said Section 618.

The protests also make the alternative claim that, after the petition for remission or mitigation of the alleged penalties was filed with the Secretary of the Treasury under said Section 618, the Collector was without legal authority to make a liquidation or decision involving the assessment, imposition, exaction, or collection of the penalties the subject of such petition, unless and until the Secretary rendered a *valid* decision upon such petition.

The first point for decision is whether this court has jurisdiction to review decisions of the Secretary of the Treasury relating to assessments of duty on imported merchandise. Counsel for the plaintiff points out that section 514 of the Tariff Act of 1930 gives importers the right of protest to—

\* \* \* all decisions of the collector, *including the legality of all orders and findings entering into the same,* as to the rate and amount of duties chargeable, and as to *all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)* \* \* \*. [Italics ours.]

This point was passed upon in the case of *Hudson Forwarding & Shipping Co.* v. *United States,* T. D. 46389, wherein the court reviewed a decision of the Secretary of the Treasury rendered under the provisions of section 520 of the Tariff Act of 1930. We are of opinion that the court has jurisdiction to consider the legality of the decision

of the Secretary of the Treasury only when it governs the decision of the collector.

The only question presented to the court for decision is whether or not the so-called additional duty imposed by section 304 (b) for failure to mark imported merchandise so as to indicate the country of origin thereof is a "penalty" within the meaning of said section 618. Counsel for the plaintiff calls attention, in his brief, to the fact that assessments under section 304 were called penalties by the appellate court in the following cases: *United States* v. *Martorelli*, 12 Ct. Cust. Appls. 327, T. D. 40483; *Yohalem & Diamand* v. *United States*, 14 Ct. Cust. Appls. 92 at page 94, T. D. 41586; *Smith & Nichols* v. *United States*, 18 C. C. P. A. 16, at page 18, T. D. 43974; *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. 111, at page 114, T. D. 47103. In the cases cited, however, the question of whether or not the additional duty was a penalty was not the subject of the decisions.

The plaintiff argues in his brief that the assessment of the additional duties under section 304 (b) is parallel to the assessments of additional duties for undervaluation which were held to be penalties by the United States Supreme Court in the case of *Helwig* v. *United States*, 188 U. S. 605, and by the Attorney General in 20 Op. Atty. Gen. 660, T. D. 15946. The decision in *United States* v. *Constantine*, 296 U. S. 287, is cited also. The last case cited involved the assessment of a special excise tax of $1,000 on dealers when they carry on business contrary to local State or municipal law and provided for fine and imprisonment for failure to pay. The court held that the so-called tax was a penalty. The Acting Secretary of the Treasury answered this contention completely in the following language contained in Exhibit 2:

The imposition of the marking duty is based upon the condition of the property per se at the time of its importation, a matter of classification which is determined by the collector in the liquidation of the entry, and both customs courts have frequently .characterized the additional levy as a duty. Moreover, had Congress intended such levy to be treated as a penalty, the provision for remission upon exportation would have been unnecessary. There is no requirement in the tariff laws that relief from any exaction designated as a penalty shall be conditioned upon exportation of the merchandise.

\*       \*       \*       \*       \*       \*       \*

The issue here involved can be differentiated from the issue in *Helwig* v. *U. S.*, 188 U. S., 605. The "further sum" or additional duty under consideration by the Supreme Court was based upon the *act* of the importer in undervaluing goods subsequent to and independent of their importation. The exaction held to be a penalty did not accrue upon importation nor was it dependent upon the classification of the goods with reference to their character or condition at the time of importation. *U. S.* v. *Constantine*, 296 U. S., 287, also is considered not in point because the decision turned upon an unconstitutional exercise of the taxing power.

Counsel for the defendant argues in his brief that the issue as to whether or not additional duties assessed under section 304 (b) are penalties was settled by the appellate court in the cases of *Bradford Co. et al. (United States impleaded)* v. *American Lithographic Co.*, an American manufacturer, 12 Ct. Cust. Appls. 318, T. D. 40318, *Lewis & Conger* v. *United States*, 13 Ct. Cust. Appls. 22, T. D. 40862, and *Sesquicentennial Exhibition Association* v. *United States*, 19 C. C. P. A. 288, T. D. 45466. The defendant contends that such additional duties were held not to be penalties in the cases cited. Counsel for plaintiff answers this contention in his brief as follows:

The fact is that the court did not hold in the cited *Bradford Co.* case that the additional duty in question was not to be regarded as penal in its nature. It did not say a word upon the subject in that case, nor was there any occasion for saying it. Neither did it decide the point in the *Lewis & Conger* case, *supra*, nor in any prior decision so far as we have been able to ascertain by diligent research. The case of *Helwig* v. *United States* (188 U. S. 605), and the opinion of Attorney General Olney (20 Opn. Atty. Genl. Olney, 660) and the opinion of other attorneys general upon the subject of additional duties *for failure to declare correct valuation*, and the close parallelism between such additional duties and additional duties *for failure to mark imported merchandise*, do not seem to have been called to the attention of the court or considered by it. Of course, the additional duties for failure to mark were imposed for the offense of *importing* and not of *shipping* unmarked merchandise, and the tenuous claim of the importers could have been disposed of on that ground. But aside from this consideration, we submit that the *Kee Co.* case, *supra*, in no sense envisages or decides the question whether such additional duties are "penalties" within the jurisdiction of the Secretary of the Treasury to remit or mitigate penalties. [Italics quoted.]

We have carefully reviewed the decisions in the *Bradford Co.* case and the *Lewis & Conger* case, *supra*. While the court did not state in those decisions specifically that the additional duties for failure legally to mark imported merchandise were penalties, that was one of the main questions raised by the appeals. It was claimed by the importers in the *Bradford Co.* case, *supra*, that the liquidation in which the additional duties were assessed was not a classification of the merchandise against which American manufacturers were permitted to file protests. In the *Lewis & Conger* case, *supra*, the importers claimed that the exaction was a penalty collected, without notice and without a hearing, which resulted in depriving the importers of their property without due process of law within the prohibition of the fifth amendment to the United States Constitution. The court held that the exactions were "duties" and that the action of the collector was "classification." Such decision is tantamount to holding that the additional duties were not penalties. The syllabus in the *Lewis & Conger* case plainly states that it was the decision of the court that the additional duties were not "penalties." The decision of the trial court which was affirmed on appeal distinctly held that the additional duties were not penalties. The trial court said (T. D. 39909, 44 Treas. Dec. 342, at page 344):

The answer to the importers' contention is, therefore, first, this is not a penalty in any sense.

The decisions above cited have always been referred to by the courts as standing for the principle that additional duties assessed for failure legally to mark imported merchandise were not penalties. In *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, 108, T. D. 40943, the court said:

> In the case of *Bradford Co. et al.* v. *American Lithographic Co.*, 12 Ct. Cust. Appls. 318, T. D. 40318, this court held that the additional duty provided for in section 304 (a), *supra*, was "an ad valorem rate or unit amount of duty, based entirely upon the character or condition of the merchandise;" that the assessment of such additional duty depended upon classification of the merchandise, and that such additional duty was not to be regarded as penal in its nature.

In *Sesquicentennial Exhibition Association* v. *United States*, 19 C. C. P. A. 288, 290, T. D. 45466, the court said:

> The additional duty of 10 per centum provided by said section 304 (a) has always been held by this court to be a duty, to be collected as other duties, and is not a penal provision. *Bradford* v. *United States*, 12 Ct. Cust. Appls. 318, T. D. 40318; *Kee et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *Lewis & Conger* v. *United States*, 13 Ct. Cust. Appls. 22, T. D. 40862.

In *C. J. Tower & Sons* v. *United States*, 21 C. C. P. A. 417, 428, T. D. 46943, the court said:

> We are unable to see how the exaction of additional duty in this case differs, in principle, from that discussed by us in *Bradford Co. et al.* v. *Amer. Lith. Co.*, 12 Ct. Cust. Appls. 318, T. D. 40318, and later in *Lewis & Conger et al.* v. *United States*, 13 Ct. Cust. Appls. 22, T. D. 40862. The statute involved in those cases was section 304 (a) of the Tariff Act of 1922, 42 Stat. 858, 926, the marking provision. This section provided for the exaction of an additional duty of 10 per centum of the appraised value of the imported merchandise which was not properly marked, stamped, branded, or labeled. In the latter case cited, the importers protested, as here, that the additional exaction was a penalty, and that its property was being taken without due process of law. This court held the exaction to be a duty, and that the Board of General Appraisers had complete jurisdiction.

In a supplemental brief filed by plaintiff it is pointed out that in the revision of section 304 in the act of June 25, 1938 (published in T. D. 49646), the Congress used the following language in section 304 (c):

> * * * there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, *shall not be construed to be penal*, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. [Italics ours.]

Counsel argues that the enactment of the italicized part of the section quoted above is a congressional admission that the additional duty imposed by section 304 (b) of the Tariff Act of 1930 was intended to be a "penalty" and that it was subject to remission under section 618, citing *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T. D. 31211; *Tilge* v. *United States*, 2 Ct. Cust. Appls. 129, T. D. 31662; *American Express Co. et al.* v. *United States*, 2 Ct. Cust. Appls.

459, T. D. 32207; and *Isler & Guye* v. *United States,* 10 Ct. Cust. Appls. 74, T. D. 38339.

*United States* v. *Wells, Fargo & Co., supra,* is the only case among those cited which has any bearing on this issue raised by plaintiff. That case arose under the Tariff Act of 1897 but was not considered by the court until after the Tariff Act of 1909 was enacted. The merchandise, which consisted of rhodium, was held to be free of duty by the Board of United States General Appraisers (now the United States Customs Court) under either of the provisions for "platinum, unmanufactured," "palladium," or "iridium." It appeared from the record that rhodium belonged to the platina group which consisted of six separate and distinct elementary metals, namely, platinum, rhodium, iridium, osmium, selenium, and tellurium. In urging that rhodium was not intended to be classified under either of the provisions for "platinum, unmanufactured," "palladium," or "iridium" in the Tariff Act of 1897, counsel for the Government pointed out that, in the Tariff Act of 1909, rhodium was specifically provided for in the free list. Counsel claimed that this was a legislative interpretation of the intent of Congress in the Tariff Act of 1897 and that a new provision for rhodium in the act of 1909 would not have been inserted if the provisions in the free list in the act of 1897 were believed to have been sufficient to cover it. The appellate court said:

We are rather constrained to the view that it is a legislative admission that the language of the act of 1897 was not sufficient to cover the omitted metals found in this group and not named in the statute, and for that reason the respective sections of the free list, above quoted, pertinent to this subject, were not, and were not deemed by Congress, sufficiently broad to include the omitted elements; hence its extended scope in the act of 1909.

The facts in the case cited are somewhat different from those in the case herein involved. Here, the courts distinctly held, in construing the provisions of the act of 1922, that additional duties assessed for illegal marking were not penalties. The provisions of section 304 of the act of 1922 were reenacted in the act of 1930 with no changes relating to that point. The decisions of the courts evidently met the approval of Congress. When the provision was revised in the act of June 25, 1938, Congress inserted a phrase in conformity with the judicial construction of the provisions of the act of 1922. While a change in language usually imports a change in meaning, it is our opinion that Congress used the above-quoted italicized language in the act of June 25, 1938, as an adoption of the interpretation placed upon the provisions of section 304 by the courts rather than as a change in meaning.

It is obvious from the record in this case that the collector exacted duties on the merchandise under section 304 (b) because the immediate containers of the raw silk were not legally marked when im-

ported. The collector made no written report to the court but the facts appear in the letters of the solicitor in both protests, which letters, by agreement of counsel, were admitted in evidence. In the solicitor's letter attached to protest 898143–G attention is directed to the fact that the Bureau of Customs denied the importer's petition for relief but that fact is not given as the reason for the assessment of the duty. The solicitor expressed the belief that the decision of the collector was correct for the reason that the merchandise was not legally marked. The following excerpt appears in that letter:

The facts concerning this importation were the subject of a decision by the Bureau of Customs, Washington, D. C., in which the application for relief from the assessment of the additional marking duty was denied.

Since at the time of importation neither the merchandise nor the immediate containers were legally marked to indicate the country of origin, we believe the additional marking duty was correctly assessed.

It is noted on the entries covered by protest 885229–G that the application for relief was denied, but there is nothing in the record in the case which indicates that the assessment is an exaction within the jurisdiction of the Secretary of the Treasury or that the Secretary of the Treasury directed or controlled the decision of the collector. Therefore there is nothing in this record which would authorize the court to review the decision of the Acting Secretary of the Treasury introduced in evidence as Exhibit 2.

We find that the merchandise was not legally marked at the time of importation and hold that the additional duties at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 were properly assessed. Accordingly, the protest is overruled. Judgment will be entered in favor of the defendant.