(C. D. 2053)

H. Z. Bernstein Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided December 10, 1958)

*Bailey & Muller* (*George J. McCormack* and *William Whyman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's liquidation of an entry covering two cases of watch movements, cases, and parts, without any allowance for one case which was not found for delivery to the consignee.

The merchandise was imported from Switzerland via Seaboard and Western Airlines and arrived at New York International Airport (Idlewild) on or about June 18, 1955. It was entered for warehouse on June 23, 1955, and one case was withdrawn the next day. The other case was designated for examination and was examined on June 24, 1955, at the airport. During the ensuing weekend, it was stolen and could not be found for delivery on Monday, June 27, 1955.

Thereafter, an application was made by plaintiff on customs Form 4315 for an abatement or refund of duty on the missing merchandise. The claim was rejected by B. H. Flinn, Chief, Division of Entry, Value, and Penalties, Bureau of Customs, on May 8, 1956, in a letter admitting that the case had been stolen, but stating:

Consideration has been given to the provision in section 563 (a), Tariff Act of 1930, for an allowance in duties because of the loss by theft of any merchandise while in the appraiser's stores. This provision is not applicable to the circumstances of this case.

Said section 563 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides:

(a) ALLOWANCE.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry

and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated, and to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be, but no abatement or refund shall be made in respect of injury or destruction of any merchandise in bonded warehouse occurring after the expiration of three years from the date of importation. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons.

The Secretary of the Treasury is authorized to prescribe such regulations as he may deem necessary to carry out the provisions of this subdivision and he may by such regulations limit the time within which proof of loss, theft, injury, or destruction shall be submitted, and may provide for the abatement or refund of duties, as authorized herein, by collectors of customs in cases in which the amount of the abatement or refund claimed is less than $25 and in which the importer has agreed to abide by the decision of the collector. The decision of the collector in any such case shall be final and conclusive upon all persons.

Any case pending before the United States Customs Court upon the effective date of this Act, under the provisions of section 563 of the Tariff Act of 1922, may, with the consent of the parties and the permisison [sic] of the court, be transferred to the Secretary of the Treasury, or to the collector, for consideration and final determination in accordance with the provisions of this subdivision.

By virtue of Reorganization Plan No. 26 of 1950 (64 Stat. 1280), the Secretary's authority under this section was delegated to the Commissioner of Customs (Treasury Department Order No. 165, Revised, T. D. 53654) and by the latter to the Chief of the Division of Entry, Value, and Penalties (Customs Delegation Order No. 1, revised, T. D. 53694). The term "Secretary of the Treasury," as used in this decision, includes the persons to whom his authority has been delegated.

At the trial, three witnesses testified as to the procedure followed when cargo is landed at Idlewild Airport: Michael Z. Berger, who has been importing watches under his own firm name since 1948; Daniel F. Cromack, deputy collector and administrative officer in the Air Transportation Division at Idlewild Airport; and Harry Frumess, presently assistant appraiser in charge of the airport and, in June 1955, a customs examiner and assistant to the assistant appraiser in charge of the airport.

Mr. Berger testified that, under the usual procedure at Idlewild Airport, upon payment of duty at the entry division, he would be given a release which he would present first to the airline official, who checked it with the bill of lading, and then to the customs man at the airline office, who would tell him if the merchandise had already been examined. If it had been, he would go to the other end of the shed to pick it up. He stated that he could not prevent customs officials

from inspecting his goods or from taking merchandise out of packages for closer examination.

According to the testimony of Mr. Cromack, cargo is removed from planes landing at Idlewild Airport by the personnel of the air carrier and is placed in the carrier's cargo room. The witness stated:

> We have some thirty inspectors assigned to some twenty various cargo rooms at the airport. Upon receipt of a manifest from the carrier they are charged or responsible for the accounting of every piece of cargo on board an aircraft that arrives at the airport within that cargo room. Upon receipt of a permit, and after all Customs formalities have been complied with, they then release the cargo to the carrier for delivery to the ultimate consignee.

According to this witness, it has been the practice at Idlewild Airport for the carriers to provide adequate facilities for the examination of merchandise, so that customs officials could perform their necessary functions and in order to expedite the delivery of goods to the importers. The Government does not own, lease, or pay any rent for such premises, but customs examiners and verifiers are assigned to the various airlines twice a day. Mr. Frumess testified that, when Idlewild was set up, the airlines came to him with blueprints to find out if the space set aside for examination would be adequate for his needs; that the airlines wanted the cargo examined at the airport, because it expedited delivery by 2 days by not having it sent down to the building at 201 Varick Street.

Mr. Cromack testified that he was familiar with the Seaboard and Western office which existed in 1955 at Idlewild. He said that an inspector was assigned to that office and that he sat in a room provided by the airline adjacent to the entrance to the cargo room. Neither the inspector nor anyone under the witness' supervision had a key to the cargo room. The Government did not own or operate it, and, according to the witness, the inspector was not responsible for the safeguarding of any packages within the area.

Seaboard and Western also provided an area for the examiners to work in, to which the public was not admitted. According to Mr. Frumess, this area was sectioned off, but was not kept under lock and key. He said that when merchandise is to be inspected, the examiners ask for the cases designated by the collector for examination and personnel from the airline bring them in. A Government verifier opens the cases and the examiner inspects them. After examination, the merchandise is removed from the examination room by the personnel of the air carrier. It remains in the cargo area until it is released by customs officials for delivery to the ultimate consignee. The physical transfer is accomplished by the airlines personnel.

Mr. Frumess also testified that the personnel who work for the appraiser at the airport are not responsible for the safety of the

merchandise. He said that, in his opinion, an airport examination is similar to a pier or wharf examination.

The protest herein was brought "under Section 514 of the Tariff Act against the Collector's decision disallowing abatement or allowance for loss and against the liquidation of the duty on said lost case." Since the merchandise did in fact arrive in this country, the right of the Government to duties thereon had accrued, and no allowance could have been made for the loss, except pursuant to section 563 (a), *supra*. *Silberman-Becker Corp.* v. *United States*, 27 C. C. P. A. (Customs) 79, C. A. D. 65; *H. S. Dorf & Co., Inc.* v. *United States*, 35 Cust. Ct. 43, C. D. 1719. In view of the fact that the amount involved here is more than $25, the collector had no authority to make such an allowance in the first instance.

Subsequent to the liquidation, an application was made to the Secretary of the Treasury for such an allowance, but the same was denied. Under the pertinent regulations (Customs Regulations, section 15.1 (f)), when such a decision has been made, the collector is required to proceed in conformity therewith. Accordingly, the collector made no change in his liquidation and forwarded the protest and all official papers to this court.

Both parties have considered this case as one involving the Secretary's denial of the application made under section 563 (a), *supra*. It has been held, under a predecessor to this section, that the court has jurisdiction of a protest challenging the action of the collector upon the ground that he did not grant the relief provided for in the statute. *Stone & Downer Co.* v. *United States*, 38 Treas. Dec. 675, T. D. 38516. It was stated in that case (p. 677):

* * * The protest, however, in this case challenges the action of the collector of customs upon the ground that he did not grant the relief for which that section provides. * * * The collector's action in assessing duty and the importer's action in filing a protest against that assessment bring the case properly before this board. We can not, therefore, dismiss it upon the ground that the statute which the importer invokes is one which gives no authority to the collector of the port. The collector has acted within the scope of his authority in this case.

Section 563 (a) provides that "The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons." Consequently, it has been held that the court has no authority to grant or disallow an abatement or refund of duties under the section nor does it have authority to review on the merits the decision made by the Secretary. *Michaelian & Kohlberg, Inc.* v. *United States*, 65 Treas. Dec. 1372, Abstract 27365; *T. D. Downing Co.* v. *United States*, 73 Treas. Dec. 406, T. D. 49441, rehearing denied, 73 Treas. Dec. 1324, Abstract 38855; *McKesson & Robbins* v. *United States*,

13 Cust. Ct. 290, Abstract 49737; *Armour and Company* v. *United States*, 29 Cust. Ct. 296, C. D. 1482.

In a case under a predecessor· to section 563 (a), involving the question of whether certain merchandise was in customs custody, it was held that the decision of the Secretary was final and the court had no appellate power to review his decision. *D. M. Ferry & Co.* v. *United States*, 85 Fed. 550. The court said (p. 553):

This section gave the secretary of the treasury authority to hear and determine claim for refunds coming within this section. He could not exercise that authority without first determining the facts, and then applying the law of the section to them. In the case at bar he rendered his decision that on the facts stated the petitioner did not bring his case within the section, and that therefore the petition filed under the section must be rejected. * * *

We hold that, as neither section 2984 nor any other part of the revenue laws gave to the federal courts appellate power to review the decision of the secretary under the section, he was made the final judge or tribunal to decide upon the validity of the claim in question.

In *Stone & Downer Co.* v. *United States*, 11 Ct. Cust. Appls. 484, T. D. 39626, the Secretary refused to grant an allowance for goods damaged within the limits of a port of entry on the ground that Scituate was not within such port, although the records of the department and the report of the deputy collector disclosed that it was. The court concluded that the Secretary's action was unjust, capricious, and arbitrary, but added (p. 486):

Unfortunately, however, the Board of General Appraisers and this court have no power whatever to review a decision which worked so manifest a wrong and left to the collector no option other than that of assessing full duties on the damaged merchandise.

The Government has the right to provide for the summary collection of its revenues and to restrict the duty payer to certain special tribunals and to certain specific remedies for acts of injustice that may be done in its behalf. It may, if it sees fit, make the Secretary of the Treasury the final arbiter for the quasi judicial determination of claims against it arising under revenue laws. (Ferry & Co. *v.* United States, 85 Fed. 550, 553.)

It has been held that where a statute expressly provided that any claim passed upon pursuant to the act should be finally determined and should never be reopened, it was clearly the intention to confer upon the Treasury Department exclusive jurisdiction and to make its decision final. *United States* v. *Babcock*, 250 U. S. 328.

Plaintiff claims, however, that the court has the authority to review a decision of the Secretary which attempts to construe or interpret the tariff act and that the Secretary, in denying the application herein, erroneously construed the term "appraiser's stores."

In *Michaelian & Kohlberg, Inc.* v. *United States, supra,* the Secretary declined to grant a refund of duties on the ground that the merchandise had been lost prior to the effective date of the Tariff Act of

1930. The court found that the collector had assessed duty under that act, thus treating the loss as if it had occurred at the time of withdrawal of the other merchandise. The court held, therefore, that the Secretary's denial of a refund was due to an erroneous construction of the law but that the court was without jurisdiction to direct the return of the duties illegally collected.

The statute involved in *Mills & Gibb* v. *United States*, 8 Ct. Cust. Appls. 31, T. D. 37164, provided that duty should not be assessed upon an amount less than the entered value, except by direction of the Secretary of the Treasury in cases where the entry was made under duress and the importer's contention was sustained on reappraisement. It was claimed that the Secretary misinterpreted the law in defining the term "contention" to be the valuation placed on the merchandise at the time of entry. The court held that the Secretary's action was not subject to review, stating (p. 37):

* * * A reading of the paragraph discloses that the authority which is thereby vested in the Secretary is not formal or ministerial in character but is quasi judicial. In the exercise of it the Secretary is called upon to inquire whether a proper certificate has been filed by the importers at entry, whether a similar case was then pending upon appeal for reappraisement, whether the importers' "contention" therein has subsequently been sustained by a final decision upon reappraisement, and whether the action of the importers at entry was taken in good faith and after due diligence and inquiry upon their part. This requires an examination by the Secretary into the facts and circumstances of the case, and a quasi judgment upon the questions just enumerated. [Citing cases.] The act does not provide for an appeal from a refusal by the Secretary to direct an assessment in the exercise of this authority, nor is there any provision for preserving or reviewing the evidence upon which the Secretary may have acted in such a case, nor can it be doubted that Congress possessed the power to entrust this authority to the Secretary without granting an appeal from his decision in such cases. * * *

Plaintiff relies upon *Cotonificio Bustese, S. A.* v. *Morgenthau*, 121 F. 2d 884, which held that for the purposes of applying section 618 of the tariff act (giving the Secretary the authority to remit penalties), the question of whether a particular customs exaction was a penalty was not one committed to the Secretary's discretion. However, that case involved a section of the tariff act, which did not provide specifically that the decision of the Secretary shall be final and conclusive, and the proceeding was in the nature of mandamus brought in the Court of Appeals for the District of Columbia. Doubt was expressed that this court would have jurisdiction to review the decision of the Secretary.

In *H. L. Gwalter & Co., Inc.* v. *United States*, 2 Cust. Ct. 165, C. D. 116 (reversed and remanded with instructions to dismiss as having

become moot, 30 C. C. P. A. (Customs) 42, C. A. D. 212), also relied upon by plaintiff, the court did not review the decision of the Secretary, but held that since the merchandise was not legally marked, it was subject to the additional duties assessed by the collector.

While the court may not review issues the final determination of which has been conferred upon the Secretary, it may review his action for the purpose of determining whether he has exceeded the limit of his authority or has failed to comply with the terms of the statute. *United States* v. *Tower & Sons,* 14 Ct. Cust. Appls. 421, T. D. 42058; *Hampton, Jr., & Co.* v. *United States,* 14 Ct. Cust. Appls. 350, T. D. 42030 (affirmed in *J. W. Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394); *Kleberg & Co. (Inc.)* v. *United States,* 21 C. C. P. A. (Customs) 110, T. D. 46446; *Carl Zeiss, Inc.* v. *United States,* 23 C. C. P. A. (Customs) 7, T. D. 47654; *Waterman Steamship Corp.* v. *United States,* 30 C. C. P. A. (Customs) 119, C. A. D. 223; *Armour and Company* v. *United States, supra.*

In the instant case, we do not find that the Secretary exceeded his authority in holding section 563 (a) inapplicable to this case, even though this involved a determination that the theft did not occur while the merchandise was in the appraiser's stores.

A reading of section 563 (a) discloses that it was the intention of Congress to limit abatement or refund for loss by theft to merchandise stolen while in the appraiser's stores and not to permit allowances for merchandise stolen elsewhere even when in customs custody. *Silberman-Becker Corp.* v. *United States, supra.* It is quite evident, therefore, that "appraiser's stores" must be a definite place, easily recognized, over which the Government has control, and not anywhere where merchandise is held for customs examination or storage.

The Tariff Act of 1930 does not define the term "appraiser's stores" but does define the term "public stores," as any premises owned or leased by the Government and used for the storage of merchandise for the final release of which from customs custody a permit has not been issued (section 561).

The two terms have been used more or less interchangeably in the tariff act. For instance, in section 499 it is provided that the collector shall order packages to be sent to the public stores or other places for examination, whereas, in section 506, reference is made to merchandise sent to the appraiser's stores for examination. Section 564 provides that whenever the collector shall be notified of the existence of a lien on merchandise sent to the appraiser's stores for examination, entered for warehousing or taken possession of by him, he shall refuse to permit delivery from public store or bonded warehouse until the lien has been discharged.

Although section 499 uses the term "public store," section 8.26 (b) of the Customs Regulations provides:

If the appraiser desires additional packages or quantities of merchandise for the purpose of examination, inspection, or appraisement, he shall notify the importer on customs Form 3483 to deliver them to the appraiser's stores or other place designated by him.

Section 24.12 (c) provides:

The rates charged for storage in Government-owned or rented buildings shall not be less than the charges made at the port by commercial concerns for the storage and handling of merchandise. Except as to an examination package covered by an application for an entry by appraisement, storage shall be charged on any examination package for any period it remains in the appraiser's stores after 2 full working days following the day on which the permit to release or transfer was issued. As to an examination package covered by an application for an entry by appraisement, storage shall be charged for any period it remains in the appraiser's store after 2 full working days following the day of issuance to the importer of oral or written notice of the amount of duties or taxes required to be deposited or that the package is ready for delivery.

The terms have also been used interchangeably in court decisions. *Kennedy* v. *Magone*, 158 U. S. 212; *Davies, Turner & Co.* v. *United States*, 67 Treas. Dec. 1068, Abstract 29859.

Plaintiff argues that the Secretary's action discriminates among competing groups of importers by denying the benefits of section 563 (a) to importers by air. However, since the collector may order any merchandise, no matter how imported, to the public store or other place for examination (section 499) and since section 563 (a) applies to all merchandise stolen while in the appraiser's stores, we are unable to find any illegal discrimination. Merchandise imported by ship may be designated for examination at the wharf or at the appraiser's stores, and merchandise imported by air may be designated for examination at the airport or at the appraiser's stores. The witness Frumess testified that an examination at the airport is like an examination at the wharf.

The Government does have some degree of customs custody and control of the merchandise until a permit for its release has been issued, but an allowance may be made only where the merchandise is taken from the appraiser's stores. The Government might maintain and operate an appraiser's store at Idlewild Airport, but it does not do so. Examinations are made on premises owned and operated by the airlines. After examination, the merchandise is taken to the cargo room of the airlines by airlines' personnel pending delivery to the consignee. The Government does not own, lease, or operate such cargo room, nor does its personnel have keys thereto.

In view of the above considerations, we find that it was entirely valid and reasonable for the Secretary to hold that section 563 (a) did

not apply to merchandise stolen from the cargo room of an air carrier at Idlewild Airport.

For the reasons stated, we hold that the claims in the protest and those raised at the trial must be overruled. Judgment will be rendered accordingly.